UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

SARAH WILLIAMS,

    Plaintiff,

v.

UNITED STATES FOUNDRY & MANUFACTURING CORPORATION, a Florida Profit Corporation d/b/a U.S. FOUNDRY & MANUFACTURING CORP.

    Defendant.

CASE NO.

COLLECTIVE ACTION REPRESENTATION

DATE: March 13, 2012

**COLLECTIVE ACTION COMPLAINT FOR VIOLATION OF THE FLSA AND DEMAND FOR JURY TRIAL**

Plaintiff, SARAH WILLIAMS (hereinafter "Plaintiff" or "Ms. Williams") individually, and on behalf of all those similarly situated who consent to their inclusion in this collective action, files this Complaint against Defendant, UNITED STATES FOUNDRY &MANUFACTURING CORPORATION d/b/a U.S. FOUNDRY & MANUFACTURING CORP (hereinafter "Defendant" or"U.S. Foundry"), for violations of the Fair Labor Standards Act, 29 U.S.C. 216(b) for: (1) failing to pay the Plaintiff (and others similarly situated) overtime compensation and (2) failing to maintain and preserve accurate and true records of all hours worked and wages earned, and in support thereof alleges as follows:

**INTRODUCTION**

1.    The Fair Labor Standards Act is our nation's foremost wage law. The overtime requirements of the Fair Labor Standards Act ("FLSA") were meant to apply financial

Feldman, Fox & Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

pressure to spread employment to avoid the extra wage and to assure workers additional pay to compensate them for the burden of a workweek beyond the hours fixed in the act. In re Novartis Wage & Hour Litig., 611 F.3d 141, 150 (2d Cir. N.Y.2010).It requires minimum wage and overtime pay for certain non-exempt employees. 29 USC Sec. 213.

2.      Sales Representatives, are typically considered exempt from the overtime provisions of the FLSA as an "outside salesman" if they have the primary duty of "making sales" and/or as an "administrative" employee if they exercise discretion and independent judgment with respect to matters of significance. However, in recent yearsthe courts have closely examined the constraints of these exemptions and have concluded that in many circumstances Sales Representatives are not exempt from the overtime provisions of the FLSA. See *In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 157 (2d Cir. N.Y. 2010)ruling that Novartis' arguments that Sales Representatives fall under the administrative and outside salesman exemption have "*no merit*." See also, *Gregory v. First Title of America, Inc.*, 555 F.3d 1300, 1309 (11th Cir.2009) (employee who obtained commitments to buy her employer's title insurance service and was credited with those sales, and all of whose efforts were directed towards the consummation of her own sales and not towards stimulating sales for the employer in general, was an outside sales employee within the meaning of the FLSA and the regulations);*Wirtz v. Keystone Readers Service, Inc.*, 418 F.2d 249, 253, 260 (5th Cir.1969) ("student salesmen" were not outside sales employees where their promotional activities were incidental to sales made by others).

3.      This is a collective action, on behalf of all **Sales Representatives** of U.S. Foundry (collectively "*the Class*") who are or were employed by U.S. Foundry, to

Feldman, Fox & Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

recover unpaid overtime and similar such relief pursuant to the Fair Labor Standards Act.

## JURISDICTION AND VENUE

4. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, because this action involves a federal question under the Fair Labor Standards Act, 29 U.S.C., Sections 201-219, inclusive.

5. This Court has personal jurisdiction over this action because the Defendant is a corporation doing business within the state of Florida with its principal place of business and corporate headquarters located in Florida (specifically 8351 N.W. 93rd Street, Medley Florida, 33166-2025).

6. Venue is proper in the SouthernDistrict of Floridapursuant to 28 U.S.C.§1391.

## THE PARTIES

7. At all times relevant to this action, Representative Plaintiff, Sarah Williams,resided in in Peach County, Georgia.

8. At all times relevant to this actionMs. Williams worked for the Defendant under the title of Sales Representative.

9. At all times relevant to this action, Ms. Williams, and all other members of the proposed FLSA collective action, were employees of U.S. Foundry within the meaning of 29 U.S.C. § 203(e)(1).

10. Defendant, United States Foundry &Manufacturing Corporation d/b/a U.S. Foundry & Manufacturing Corp., is a Florida for-profit corporation organized and existing under the laws of the state of Florida, and is engaged in business in the state of Florida with a primary place of business and corporate headquarters located at 8351 N.W. 93rd Street, Medley, Florida, 33166.

11.     For purposes of the collective action, Ms. Williams consents in writing to be a party to this action pursuant to 29 U.S.C. § 216(b).[1]

12.     At all times relevant to this action, U.S. Foundry employed Ms. Williams, and all other members of the proposed FLSA collective action, within the meaning of 29 U.S.C. § 203(g).

13.     At all relevant times, the unlawful conduct against the Plaintiff and Class members as described in each and all of the foregoing paragraphs were actuated, in whole or in part, by a purpose to serve the Defendant.

14.     The Defendant employs a class of individuals they call Sales Representatives throughout the United States. More specifically, the Defendant employs Sales Representatives in Florida, Georgia, Mississippi, Louisiana, Alabama, Virginia, South Carolina, and North Carolina.

15.     The Defendant was, and continues to be, an enterprise engaged in commerce within the meaning of the FLSA.

16.     Based upon information and belief, the annual gross revenue of U.S. Foundry was in excess of $500,000 per year during the relevant time periods.

17.     At all relevant times, U.S. Foundry has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of FLSA 29 U.S.C. §§ 206(a) and 207(a).

18.     U.S. Foundry is subject to the FLSA.

## GENERAL ALLEGATIONS

19.     Plaintiff was employed by U.S. Foundry as a Sales Representative from May 15, 2006 through her termination on November 21, 2011.

---

[1] See Exhibit A - Sarah William's Consent to Join Collective Action

Feldman, Fox & Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

20. Plaintiff, and the members of the Class were misclassified by U.S. Foundry as exempt employees under the title "Sales Representative".

21. Plaintiff and other Sales Representatives are paid on a salary basis, irrespective of the hours actually worked. In fact, ***the Defendant mandates that its Sales Representatives work in excess of forty (40) hours per week, and goes so far as to specify that they should work "50+ hours weekly Monday through Friday."***[2]

22. Though the Plaintiff and other Sales Representatives are paid on a salary basis, their paystubs indicate a respective hourly "Pay Rate". For example, for the week ending on March 28, 2010, Ms. Williams' paystub shows a "Pay Rate" of $30.2500.[3]

23. Additionally, the Defendant mandated that Sales Representatives attend weekend trade shows and training programs without extra pay.

24. Plaintiff and other Sales Representatives were given "sales targets" as ballpark figures and projections for their territory's achievement. **Plaintiff and other Sales Representatives did not receive commissions on any sales**, and **were not otherwise compensated for meeting or exceeding the sales targets set in their territory**.

**<u>DUTIES DICTATE THAT NO EXEMPTION APPLIES HERE</u>**

25. FLSA provides that, with certain exceptions, employers must pay employees overtime of at least one and one-half times their regular rate of pay for any hours over forty (40) worked in a week. 29 U.S.C. § 207(a)(1).

---

[2] See Sarah Williams' Employment Agreement attached as <u>Exhibit B</u>&February 16, 2009 Memorandum attached as <u>Exhibit C</u>
[3] See Sarah Williams' March 28, 2010 paystub attached as <u>Exhibit D</u>

26.     The Act exempts certain employees from the overtime requirements but it is the employees duties, not job title, that dictate whether he or she is entitled to an exemption.

27.     However, an "employer who claims an exemption from the FLSA has the burden of showing that the exemption applies."*Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983).

28.     Although the FLSA provides for certain exemptions to the mandates of paying overtime compensation, no exemption applies in the instant matter.

29.     Unless proven to be exempt from the protection of overtime laws, all employees are entitled to premium overtime pay for work in excess of forty (40) hours per week.

30.     Due to the nature of the job responsibilities and requirements set forth by the Defendant, Plaintiff and members of the Class were, and continue to be, required to work more than forty (40) hours a week during the course of their employment with U.S. Foundry.

## **WHITE COLLAR EXEMPTIONS DO NOT APPLY**

31.     Plaintiff, and other Sales Representatives' job duties were, "to *market* and *promote* all U.S. Foundry products and services including municipal castings, metal gratings, hatches and other miscellaneous fabrication"[4] in their respective territories.

32.     Plaintiff, and members of this Class, in the past and still to this day:

    a. have no role in planning U.S. Foundry's executive marketing or promotional strategy;

    b. have no role in formulating the core messages that they are to deliver to distributors and municipalities;

---

[4] See Job Description attached as Exhibit E

    c. are given written promotional materials including catalogs, brochures, and technical drawings, which are developed by the Sales and Marketing Manager and are to be used on sales calls and meetings;

    d. are told by their supervisors which customers to visit and call;

    e. are required to visit and call customers a certain number of times as established by U.S. Foundry and had to submit call logs proving the same;

    f. report to their supervisors by telephone at least once per week, and sometimes once daily; and

    g. cannot discount pricing or deviate from U.S. Foundry's pricing list.

33. Plaintiff, and members of the Class perform low-level, discretion-less marking and promotional work, strictly controlled by U.S. Foundry.

34. Plaintiffs, and members of the Class did not have the authority to hire or fire employees, and they did not have the authority to independently make business decisions.

35. Sales Representatives did not exercise the requisite discretion, management, and independent judgment with respect to matters of significance to be considered exempt under the FLSA's white collar exemptions.

36. Upon hire, Plaintiff, and members of the Class were required to participate in a mandatory, phased training program. During the extensive training program the Sales Representatives are given an in-depth review of U.S. Foundry's products, applications, andindustry and job specifications. Additionally, they are taught the "critical factors for success", how to fill out weekly call reports and sales logs (which are to be detailed and

submitted each week), and more generally, about the mission and vision of U.S. Foundry, which they must always observe and uphold.

37. Further, they engage in "ride-alongs" in which they accompany their supervisor to sale meetings and learn how to make small talk and build relationships with the customers. They are taught how to answer questions and speak about U.S. Foundry's products.

38. The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources. 29 C.F.R.§ 541.202(e).

39. Even after being employed with the Defendant for five (5) years, the Defendant required Ms. Williams to make daily phone calls to her supervisor at 8:00 a.m. each day to cover her plans for the day, determine her needs, consult on problems, and help her increase sales. Further, Ms. Williams had to provide a weekly narrative sales log detailing her actions, information gathered, and results. This requirement was not due to poor performance, as the Plaintiff received a Service Award for five years of "dedication, proficiency, teamwork, and superb performance" on May 15, 2011.[5]

**OUTSIDE SALES EXEMPTIONS DO NOT APPLY**

40. Further, Plaintiff, and members of the Class, in the past and still to this day:

> a. would supply municipalities and/or engineers with catalogs, brochures, and technical drawings of U.S. Foundry's products to try and encourage future sales; yet they;
>
> b. do not obtain orders for products from engineers, distributors, or municipalities;

---

[5] See Service Award, attached hereto as <u>Exhibit F</u>

      c. do not form contracts for products with engineers, distributors, or municipalities;

      d. do not transfer title or ownership of U.S. Foundry products for anything in value;

41. Sales Representatives do not obtain commitments to buy and are not credited with all of the sales that arise from their promotional work.

42. U.S. Foundry maintains the position that all sales are for the greater good of the company and that as such, Sales Representatives should work together to complete sales. For this reason, U.S. Foundry does not give commissions on sales.

43. Outside salespersons are exempt from the overtime requirement not because they "sell," as that term is technically defined, but rather because they (1) generate commissions for themselves through their work and (2) work with minimal supervision, making adherence to an hours-based compensation scheme impractical. *See Jewel Tea Co. v. Williams*, 118 F.2d 202 (10th Cir.1941).

44. The Sales Representatives at U.S. Foundry do not make commissions, and do not work with minimal supervision.

45. In some instances, Plaintiff and members of the class would help customers that were out of their territory. For example, Representative Plaintiff, the Sales Representative for the entire Georgia territory during the later years of her employment with the Defendant, would occasionally promote the Defendant's products to customers in South Carolina, Florida, and Alabama when the customers were working on Georgia jobs. As customary policy, since the Sales Representatives do not actually sell the products they promote, all customer orders are placed through the local area branch. As such, the South Carolina, Florida, and Alabama customers placed their

Feldman, Fox & Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

orders in their respective territories and the Sales Representative for their territory received the credit towards his/her "sales target". The Defendant maintains the position that it does not matter who receives the credit, as long as U.S. Foundry was receives orders. Sales Representatives do not receive commission because they work for the betterment of the company, not for themselves.

46. The Defendant does not provide any form of sales tracking or reporting software and to the extent that Sales Representatives wish to see whether or not a sale has consummated, they must contact their regional office and request a customer report.

47. "If [a Sales Representative's] efforts are directed toward stimulating the sales of his company generally rather than the consummation of his own specific sales his activities are not exempt". See <u>In re Novartis Wage & Hour Litig</u>., 611 F.3d 141, 150 (2d Cir. N.Y.2010) citing, Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed.Reg. 22122, 22124 (Apr. 23, 2004).

48. Sales Representatives do not directly deal with the end-users of U.S. Foundry's products. Sales Representatives market and promote U.S. Foundry products to distributors. The distributors purchase a stock of U.S. Foundry products to keep "on the yard" for purchase by municipalities and/or contractors (the end-users). As the products on the yard are purchased from the distributors by municipalities and contractors, the distributor repurchases and restocks the yard bycontacting their local U.S. Foundry branch.

49. The distributors secure a continuous relationship with U.S. Foundry, repurchasing and replenishing stock without the promotion or marketing of the Sales

Representatives, leaving the Sales Representatives to engage in "take offs". During a "take off", a Sales Representative would look at project blueprints and/or job reportsdeveloped by a municipality or engineer for a large scale project, (for example, the building of a hospital, university, government building, car dealership, etc.) as they were forwarded to the Sales Representatives by their managers through the job database "I square foot".

50.     The Sales Representatives first looked to see if the project had any "approved specifications". Approved specifications are the specific products that the job requires. If a U.S. Foundry product had been specified for the job by the engineer, the specific U.S. Foundry product name and product number would be listed on the report. If a U.S. Foundry product had been specified, then the Sales Representatives' would give the distribution center a heads up as to the order.

51.     If the blueprint or job report did not contain any approved specifications, then the Sales Representative would review the blueprint and/or job report and would count the grates, structures, manhole covers, and other products sold by U.S. Foundry that the job required.   The Sales Representative would then contact the engineer and would promote U.S. Foundry products by matching the product required by the engineer to a product in U.S. Foundry's catalog.

52.     The Sales Representatives **could not sell U.S. Foundry's products, nor could they "close on the sale" or "obtain a commitment to buy" for any particular project.**U.S. Foundry would have to bid on the project, and then the project would be awarded. After the project was awarded, it might be a year before the job starts.

Feldman, Fox & Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

## HOURS NOT PAID FOR OVERTIME AND AVAILABLE RECORDS

53.     Evidence reflecting the precise number of overtime hours worked by Plaintiff and every other member of the Class, as well as the applicable compensation rates, is in the possession of U.S. Foundry.

54.     Representative Plaintiff's records and projections estimate that she worked approximately sixty-five (65) hours per week.

55.     However, and to the extent records are unavailable, Plaintiff and members of the Class may establish the hours they worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946).

## WORKING LUNCHES

56.     Plaintiff and the Class are also not paid during working lunches, and even when Plaintiffs do not take a lunch.

57.     Because the Plaintiff and Class members would often work during lunch, or be engaged in a working lunch (where they would eat while working, often when taking a customer to lunch or driving to a sales call) both off and on the clock, and not get paid for all of their time, they are entitled to compensation for this time.

58.     The regulations provide that if the employee is required to perform any duties--whether active or inactive--while eating, the meal period is not bona fide and the time spent in eating is compensable. *See* 29 CFR 785.19 and *Kohlheim v. Glynn County*, 117 Lab. Cas. (CCH) 35413, 915 F. 2d 1473, 29 Wage & Hour Cas. (BNA) 1673 (11th Cir. 1990).

## **FAILURE TO MAINTAIN TRUE & ACCURATE RECORDS OF HOURS WORKED**

59. All employers subject to the Fair Labor Standards Act must maintain and preserve certain records describing the wages, hours and working conditions of their employees.

60. With respect to an employee subject to the minimum wage provisions the following records must be kept:

> a. Personal information, including employee's name, home address, occupation, sex, and birth date if under 19 years of age;
>
> b. Hour and day when workweek begins;
>
> c. Regular hourly pay rate for any week when overtime is worked;
>
> d. Total hours worked each workday and each workweek; Total daily or weekly straight-time earnings;
>
> e. Total overtime pay for the workweek;
>
> f. Deductions from or additions to wages;
>
> g. Total wages paid each pay period;
>
> h. Date of payment and pay period covered

61. Failure to comply with the recordkeeping requirements is a violation of the FLSA for which criminal or civil sanctions may be imposed, whether or not other statutory violations exist. See 29 U.S.C. § 215(a)(5). See *Dunlop v. Gray-Goto, Inc.*, 528 F.2d 792 (10th Cir. 1976).

62. Accurate records are not only required for regulatory purposes, they are critical to an employer's defense of claims that it violated the Act. An employer that fails to maintain the required records cannot avoid liability in a wage-hour case through argument that there is insufficient evidence of the claimed hours worked. See *Wirtz v.*

*First State Abstract Ins. Co.,* 362 F.2d 83 (8th Cir. 1966); *Boekemeier v. Fourth Universalist Soc'y,* 86 F. Supp. 2d 280 (S.D.N.Y. 2000).

63. An employer's failure to maintain records may create a presumption in the aggrieved employee's favor. See *Myers v. The Copper Cellar Corp.*, 192 F.3d 546, 551 n.9 (7th Cir. 1999), *citing Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946).

64. U.S. Foundry has failed to accurately record, report, credit and/or compensate its employees, including Plaintiff and Class members, time records.

65. U.S. Foundry has failed to make, keep and preserve records, with respect to each of its' employees, sufficient to determine the wages, hours and other conditions and practices of employment in violation of 29 CFR 516.2 and 29 U.S.C. §§ 211, 216 and related laws.

## COLLECTIVE ACTION ALLEGATIONS

66. Plaintiff brings this action on behalf of the Class, as a collective action pursuant to the Fair Labor Standards Act § 216(b).

67. The Southern District Court said in *Young v. Cooper Cameron Corp* in 2005: "The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collection action and thus no showing of numerosity, typicality, commonality and representativeness need be made."[6]

68. Still, despite the *Young* Court's ruling, the members of the Class are so numerous that joinder of all members is impracticable. While the exact number of the members of the Class is unknown to the Plaintiff at this time, and can only ascertained through appropriate discovery, Plaintiff believes there are at a minimum twenty individuals in the defined class.

---

[6]*Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)

Feldman, Fox & Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

69. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel that is experienced and competent in class/collective actions and employment litigation. Plaintiff has no interest that is contrary to, or in conflict with, members of the Class.

70. A collective action suit, such as the instant one, is superior to other available means for fair and efficient adjudication of this lawsuit. The damages suffered by individual members of the Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to them.

71. A collection action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy. Absent these actions, the members of the Class likely will not obtain redress of their injuries, and Novartis will retain the proceeds of their violations of the FLSA.

72. Furthermore, even if any member of the Class could afford individual litigation against the Company, it would be unduly burdensome to the judicial system. The instant methodology, when compared to voluminous individual actions, has fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court. Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual members of the Class, and provide for judicial consistency.

73. There is a well-defined community of interest in the questions of law and fact affecting the Class as a whole. The question of law and fact common to each of the Class predominate over any questions affecting solely individual members of the action. Among common questions of law and fact are:

Feldman, Fox & Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

  a. Whether U.S. Foundry employed members of the Class within the meaning of the applicable provisions of the FLSA;

  b. Whether Sales Representatives were uniformly and unlawfully classified by U.S. Foundry as exempt from overtime compensation;

  c. Whether U.S. Foundry failed to pay Plaintiff and the Class all overtime compensation due to them by virtue of their uniform designation as exempt;

  d. Whether U.S. Foundry and members of the Class were expected to, and/or mandated to regularly work hours in excess of forty (40) per week;

  e. Whether U.S. Foundry failed to maintain and preserve accurate and true records of all hours worked and wages earned by the Class;

  f. Whether Plaintiff and the Class have sustained damages, and if so, what is the proper measure of damages.

74. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its continued maintenance.

75. Pursuant to 20 U.S.C. § 207, Plaintiff seeks to prosecute the FLSA claims as a collective action on behalf of:

> All U.S. Foundry Sales Representativeswho worked for the company as employees in the past three years preceding this lawsuit (*i.e.*March 13, 2009) to the day of trial, and elect to opt-in to this action pursuant to FLSA, 29 U.S.C. § 216(b) and who worked in excess of forty (40) hoursduring one or more work weeks but were not paid overtime compensation for such time.

76. Notice of the pendency and any resolution of this action can be provided to Collective Action Members by mail, print, and/or internet publication.

Feldman, Fox & Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

## **COUNT I – OVERTIME DUE UNDER THE FLSA**

77. Paragraphs one (1) through seventy-six (76) are realleged as if fully set forth herein.

78. At all relevant times, U.S. Foundry employed, and/or continues to employ, Plaintiff, and each member of the Class, within the meaning of the FLSA.

79. As stated herein, Plaintiff and others similarly situated were improperly classified by U.S. Foundry as exempt; however, their work duties dictate they should have been classified and compensated as non-exempt employees, regardless of their title of "Sales Representative".

80. U.S. Foundry has a policy and practice of refusing to pay overtime compensated to its Sales Representatives for the hours worked in excess of forty (40) hours per week.

81. U.S. Foundry willfully classified Plaintiff and all other members of the Class as exempt in efforts to circumvent paying earned overtime; however, under applicable employment law, an employee is classified as exempt versus non-exempt according to their job duties, *not their job title*.  Non-exempt employees are entitled to overtime compensation regardless of whether they have an exempt title, if their duties do not reflect "exempt job duties" under the FLSA.

82. U.S. Foundry's failure to pay Plaintiff and all other members of the Class overtime compensation at a rate not less than one and one-half times the rate at which they are employed for work performed beyond the forty (40) hour workweek, is a violation of the FLSA, in particular 29 U.S.C. §§ 206 and 207.

83. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

84. Due to U.S. Foundry's FLSA violations, Plaintiff alleges on behalf of the members of the Class that they have suffered damages and are entitled to recover from U.S. Foundry the unpaid overtime compensation, and an additional amount equal as liquidated damages, prejudgment interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. §216(b).

## PRAYER FOR RELIEF

85. WHEREFORE Plaintiff prays for:

   a. An order designating this action as a collective action and issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to §216(b) and that notice be sent to all past and present employees of U.S. Foundry at any time during the three year period immediately preceding the filing of this suit, through and including the date of this Court's issuance of the Court Supervised Notice.

   b. An order awarding attorneys' fees and costs pursuant to § 216 of the FLSA.

   c. That the Court find U.S. Foundry in violation of the overtime compensation provisions of the FLSA and that the Court find that U.S. Foundry's violation of the FLSA were and are willful.

   d. That the Court award Ms. Williams, the putative Class and all similarly situated employees overtime compensation for all the previous hours worked over forty (40) hours, that they did not receive at least one and one-half time compensation for, in any given week during the past three years, AND liquidated damages of an equal amount of the minimum compensation; in addition interest on said award pursuant to § 216 of the FLSA.

Feldman, Fox & Morgado | 100 N. Biscayne Blvd. | Suite 2902 | Miami | Florida | 33132 | PH 305-222-7850

e. That the Court award Ms. Williams a collective action representative fee for her efforts and time dedicated to bringing justice through this action;

AND

f. That the Court award any other legal and equitable relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint and on all other issues so triable.

Dated this 13th day of March, 2012.

Respectfully submitted.

*/s/ Dale J. Morgado*
Dale James Morgado, Esq.
Florida Bar No.: 64015
FELDMAN, FOX & MORGADO, PA
100 N. Biscayne Blvd, Suite 2902
Miami, Florida 33132
Tele: (305) 222-7850
Fax: (305) 384-4676
Email: dmorgado@ffmlawgroup.com

*Attorney for the Representative Plaintiff, and the Putative Class*

4838-5871-1823, v. 1